QUEENSGATE INVESTMENT CO., D.B.A.
HOLIDAY INN, APPELLANT, *v.*
LIQUOR CONTROL COMMISSION, STATE OF OHIO, APPELLEE.

[Cite as Queensgate Investment Co. v. Liquor Control Comm.
(1982), 69 Ohio St. 2d 361.]

(No. 81-633—Decided February 24, 1982.)

*Strauss, Troy & Ruehlmann Co., L.P.A., Mr. Samuel M. Allen* and *Ms. M. Michele Fleming,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. James M. Sterner,* for appellee.

*Per Curiam.*

## I.

Initially, appellant challenges Ohio Adm. Code 4301:1-1-44 on three grounds: (1) that the regulation is invalid because no authority for it has been delegated to appellee by the General Assembly; (2) that the regulation is not uniform and its application by appellee is arbitrary, capricious and unreasonable; and (3) the appellee's order was not supported by reliable, probative or substantial evidence.

Turning to appellant's first argument, we find that the challenged regulation does not exceed the grant of authority conferred upon appellee by the General Assembly. Authority for the regulation may be found in R. C. 4301.03:

"The liquor control commission may adopt * * * rules * * * necessary to carry out Chapters 4301 and 4303 of the Revised Code * * * . The rules of the liquor control commission may include the following:

" * * * *

"(E) Uniform rules and regulations governing *all advertising* with reference to the sale of beer and intoxicating liquor throughout the state and *advertising* upon and in the premises licensed for the sale of beer or intoxicating liquor * * * ." (Emphasis added.)

Appellee's regulation clearly is consistent with the specific statutory provision. The section states that regulations may govern all advertising of the sale of beer and intoxicating liquor by permit holders; the challenged regulation goes directly to the issue of this case: advertising.

Appellant relies upon *Burger Brewing Co.* v. *Thomas* (1975), 42 Ohio St. 2d 377, to support the argument that no authority has been delegated to appellee to promulgate Ohio Adm. Code 4301:1-1-44. *Burger* held that "it is evident that the General Assembly has not specifically expressed an intention that the commission have authority in the area of *pricing* in the liquor industry * * * ." *Id.,* at page 383. (Emphasis added.) *Burger,* therefore, addressed the issue of regulation of price, not regulation of advertising, and, as such, is distinguishable from the case *sub judice.*

Moreover, although *Burger, supra,* did hold, at page 385, that the silence of the General Assembly "in a regulatory area of such substantial importance and impact [pricing] is per-

suasive to us that no devolution of such power was intended," there is no such silence here. In the matter of advertising, R. C. 4301.03(E) was enacted which grants a devolution of their authority over "all advertising." Furthermore, R. C. 4301.211[2] specifically prohibits the advertising of the retail price of beer and malt beverages, which prohibition does not conflict with the general grant of authority of R. C. 4301.03(E).[3]

Appellant's second contention is that the regulation is not uniform and is being applied unreasonably and capriciously. We disagree. The regulation is on its face clear and unambiguous, in that it prohibits permit holders from advertising price per bottle or drink. It does permit advertising of the retail price of the original container or package but prohibits any reference to price advantage. We fail to discern the confusion suggested by appellant between advertisement of price per drink and price of the original container or package.

Appellant's third contention is that appellee's order was not supported by reliable, credible evidence. Specifically, appellant argues that appellee produced no evidence that the August 1978, newsletter was ever mailed. At the hearing before appellee, the following colloquy took place between the manager of the permit premises and an assistant attorney general:

"Q. Now, in the August monthly newsletter of Skywriting, did you have any mailings?

"A. Yes, we did.

"Q. Were the mailings an exact copy of * * * [Exhibit C]?

"A. It was the same newsletter.

---

[2] R. C. 4301.211 provides:

"No holder of a permit issued by the department of liquor control shall advertise the retail price of beer and malt beverages in any newspaper, circular, radio broadcast, television telecast or by any other media of advertising off the premises of the permit holder."

[3] The specific prohibition on beer advertising does not imply a limitation of regulation of other advertising of other alcoholic beverages unless there is a conflict between the general and specific statutes. *Thomas* v. *Evans* (1905), 73 Ohio St. 140. We find no such conflict. R. C. 4301.211 prohibits a specific advertising of a specific beverage; R. C. 4301.03(E) still permits appellee to regulate other advertising of other alcoholic beverages not provided for in R. C. 4301.211.

" * * *

"Q. Are they always mailed on the second Friday of the month?

"A. Yes, sir."

This admission by appellant's employee provides an evidentiary basis for appellee's order.

## II.

Appellant also argues that Ohio Adm. Code 4301:1-1-44 is an unconstitutional restraint on the exercise of First Amendment rights. For the following reasons, we disagree, and hold Ohio Adm. Code 4301:1-1-44 does not violate the First Amendment to the United States Constitution.

Commercial speech receives some constitutional protection under the First Amendment to the United States Constitution. *Bigelow* v. *Virginia* (1975), 421 U. S. 809. Commercial speech is not wholly outside of the protection of the First Amendment, even though the advertiser's interest may be purely economic; the free flow of commercial information is indispensable for the well-informed allocation of economic resources. *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council* (1975), 425 U. S. 748. Nonetheless, a regulation of commercial speech may be upheld as not violative of the First Amendment if it complies with the four-part test articulated in *Central Hudson Gas & Electric Corp.* v. *Public Service Commission of New York* (1980), 447 U. S. 557, at page 566:

"In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

Applying the first half of the *Central Hudson* test to the case *sub judice,* we find that the commercial speech involved concerns a lawful activity, the sale of alcoholic beverages by a

permit holder. The advertisement contained in appellant's newsletter set forth a price per drink under certain conditions. It was not misleading to the consumer.

We also find that the asserted governmental interest is substantial. Since the adoption of the Twenty-first Amendment to the United States Constitution in 1933, the states have had the power to regulate "the transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors." Such regulation may be directed toward a minimization of the evils associated with alcoholic beverages. In *Ziffrin* v. *Reeves* (1939), 308 U. S. 132, at pages 138-139, the court held that the state's power to prohibit absolutely includes the lesser power to permit manufacture, sale, transportation or possession, subject to prescribed conditions which are not unreasonable and which subserve the policy of confining the liquor traffic in order to minimize its evils. See, also, *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31. The governmental interest in discouraging the excessive consumption of alcoholic beverages falls within the ambit of interests described by *Ziffrin*.

Since the first two parts of the *Central Hudson* test have been answered positively, it is necessary to examine whether the regulation directly advances the governmental interest in minimizing the evils of alcoholic beverages by discouraging excessive alcoholic consumption. The regulation is directed toward regulation of the intoxicants themselves, rather than speech. This is unlike the case, *e.g.*, in *Virginia Pharmacy, supra*, where the speech was the actual focus of the regulation, since the aim of the restriction was the prevention of competition in pharmaceutical sales, not the discouragement of pharmaceutical purchases.

Finally, we come to the inquiry whether the regulation is more extensive than is necessary to serve the enunciated governmental interest. We hold that it is not. The advertising of drink prices and price advantages would encourage and stimulate excessive consumption of alcoholic beverages; an advertising prohibition aids the interest in preventing that consumption. No less extensive a regulation would achieve the same purpose. Rather, in order to serve the same governmen-

tal interest, virtually any other regulation would be more extensive: *e.g.,* increased prices, shorter hours, or reduced number of permits, would all place a greater burden on the permit holder.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and KRUPANSKY, JJ., concur.

HOLMES, J., concurs in the judgment.

C. BROWN, J., dissents.