USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1893 44 LIQUORMART, INC. AND PEOPLES SUPER LIQUOR STORES, INC., Plaintiffs, Appellees, v. STATE OF RHODE ISLAND, Defendant, Appellee, RHODE ISLAND LIQUOR STORES ASSOCIATION, Intervenor, Appellant. ____________________ No. 93-1927 44 LIQUORMART, INC. AND PEOPLES SUPER LIQUOR STORES, INC., Plaintiffs, Appellees, v. STATE OF RHODE ISLAND, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Cyr, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Lauren E. Jones with whom Caroline C. Cornwell, Jones Associates, _______________ ____________________ ________________ William P. Gasbarro and Robert M. Brady were on brief for Rhode Island ___________________ _______________ Liquor Stores Association. Rebecca Tedford Partington, Special Assistant Attorney General, ___________________________ with whom Jeffrey B. Pine, Attorney General, was on brief for State of _______________ Rhode Island. Evan T. Lawson with whom Lawson & Weitzen was on brief for ________________ __________________ plaintiffs-appellees. ____________________ October 24, 1994 ____________________ ALDRICH, Senior Circuit Judge. The State of Rhode ____________________ Island, that did not ratify the Eighteenth Amendment, and was among the earliest to ratify the Twenty-First that repealed it, in 1956 adopted two statutes, assertedly aimed at promoting temperance, forbidding advertising the price of intoxicating liquor, except at the place of sale if sold within the state. The "declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." R.I. Gen. Laws 3-1-5. R.I. Gen. Laws 3-8-7 provides, 3-8-7. Advertising price of malt 3-8-7. Advertising price of malt beverages, cordials, wine or distilled beverages, cordials, wine or distilled liquor. -- No manufacturer, wholesaler, liquor. -- or shipper from without this state and no holder of a license issued under the provisions of this title and chapter shall cause or permit the advertising in any manner whatsoever of the price of any malt beverage, cordials, wine or distilled liquor offered for sale in this state; provided, however, that the provisions of this section shall not apply to price signs or tags attached to or placed on merchandise for sale within the licensed premises in accordance with rules and regulations of the department. Section 3-8-8.1, post, enlarges this language to ____ forbidding making "reference to the price of any alcoholic beverage,"1 that defendant Rhode Island Liquor Control Administrator, a strict enforcer, construes as including remote references such as "WOW!" ____________________ 1. See also Liquor Control Adm. Reg. 32. ___ ____ -3- In this action plaintiffs, 44 Liquormart, Inc. and Peoples Super Liquor Stores, Inc., having sufficient standing to attack these statutes in every particular, seek a declaration against the Administrator (hereinafter the State) of unconstitutionality as contravening the First Amendment. Rhode Island Liquor Stores Association (Association) has intervened as a party defendant. After a bench trial, in an extensive opinion the court found for plaintiffs. Defendants appeal. They succeed with respect to limiting advertising by Rhode Island vendors. The stage it set below is described by the State. [T]he advertising ban directly advanced the governmental interest by increasing the cost of alcoholic beverages, thereby lowering the amount of alcohol consumption by residents of the State of Rhode Island. . . . [T]he State's power to totally ban any advertising about alcoholic beverages necessarily included the lesser power to restrict price advertising. Further, the State contended that plaintiffs, in order to rely on the First Amendment, must "prove that the four part Central Hudson test could not be met." ______________ Association, a group of small liquor stores, whose intervention as a co-defendant was not opposed by the State, alleged as its ground for intervening that if advertising of prices were to be allowed, its members "would be obliged to participate in the advertising arena and would be at a definite disadvantage when matched up against retailers who -4- hold multiple licenses." This complaint was later bolstered by adding that competitive price advertising would tend to lower prices, and that "a more competitive market for alcohol might be considered an undesirable goal." We start with the four issues that Central Hudson ______________ raises when a state's interest conflicts with the rights of a would-be commercial speaker. At the outset, we must determine whether the expression is protected by the First Amendment. [I] For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [II] Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [III] whether the regulation directly advances the governmental interest asserted, and [IV] whether it is not more extensive than is necessary to serve that interest. Central Hudson Gas & Electric Corp. v. Public Service ________________________________________ _______________ Commission of New York, 447 U.S. 557, 566 (1980). The ________________________ ultimate purpose is to weigh "the expression [and] the governmental interests served by its regulation." Id. at __ 563. I. In the present case the first test raises no question. II. For the second it was stipulated, "The State of Rhode Island has a substantial interest in regulating the sale of alcoholic beverages." Plaintiffs concede that promoting temperance is such an interest. The dispute, accordingly, is whether forbidding price advertising -5- "directly advances" temperance, and "is not more extensive than is necessary." There is a further question with regard to local advertising by an out-of-state vendor. III. "Directly advances." We start with the burden of proof. The burden is on the party seeking suppression, here the State. Edenfield v. Fane, 113 S. Ct. _________ ____ 1792, 1800 (1993). But to what extent? The district court held that it was an issue for it to decide, unfettered, between competing witnesses, and since, on its weighing the evidence, the court was not persuaded that the State was correct, it failed. We do not think the burden that strict. It is not correctness, it is reasonableness. In the first place, the term "directly advances" is not absolute. Edenfield, 113 S. Ct. at 1800 ("alleviate to a _________ material degree"); Trustees of the State University of New _________________________________________ York v. Fox, 492 U.S. 469, 480 (1989) ("reasonable fit"). ____ ___ See also Posadas de Puerto Rico Assoc. v. Tourism Co., 478 ___ ____ ______________________________ ___________ U.S. 328, 342 (1986) ("reasonable"). And while the state has the burden, in California v. LaRue, 409 U.S. 109, 118-19 __________ _____ (1972), the Court spoke of "the added presumption in favor of the validity of the state regulation in this area that the Twenty-First Amendment requires." Historically the state has failed where the evidence was "at most, tenuous," Central _______ Hudson, 447 U.S. at 569; "unsupported assertions: nowhere ______ does the State cite any evidence or authority of any kind," -6- Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 648 ________ ______________________________ (1985); lack of studies or "anecdotal evidence," Edenfield, _________ 113 S. Ct. at 1800. Warrantable inferences, however, may be sufficient. Posadas, 478 U.S. at 341-42 (advertising). What _______ should a court do when there is no empirical2 evidence either way, and expert opinions go both ways? Even plaintiffs' expert, whom the court credited, admitted that "advertising has cumulative effects that are difficult to detect in studies, and that research studies have been varied and equivocal because it is a difficult topic to research." Should the court be free to choose? IV. Before answering these questions we observe that the "not more extensive than is necessary" inquiry is subject to the same considerations. Re R.M.J., 455 U.S. 191, _________ 207 (1982) ("reasonably necessary"). The district court did not deal with this directly, except to note the concession of the State's expert that "the objective of lowering consumption of alcohol by banning price advertising could be accomplished by establishing minimum prices and/or by increasing sales taxes on alcoholic beverages." This is not an answer; the State is entitled to a reasonable choice. This includes choice of method -- it is not obliged to prove ____________________ 2. This word is a summary of the court's findings that such studies as were offered were too inconclusive to be relied on. -7- that some other method, e.g., taxation, would be less effective. Cf. Fox, 492 U.S. at 478. __ ___ Returning to our questions, there would seem inherent merit in the State's contention that competitive price advertising would lower prices, and that with lower prices there would be more sales. We would enlarge on this. There are doubtless many buyers whose consumption is sometimes measured by their free money. If a buyer learns that plaintiffs charge less, is he not likely to go there, and then buy more? Correspondingly, if ignorant of lower prices elsewhere, will he not tend to buy locally, at the higher price, and thus buy less? See Stanley I. Ornstein and ___ Dominique M. Hanssens, Alcohol Control Laws and the __________________________________ Consumption of Distilled Spirits and Beer, 12 J. Consumer ____________________________________________ Res. 200 (September 1985). Further, if Association members would fight plaintiffs' advertised prices, as they presage, by lowering their own, then, again, might there not be more buys? Even plaintiffs' witness Smart conceded that some believed this inference reasonable. What I'm aware of are studies that show that people generally decide how much money they have to spend on alcoholic beverages per week or per month. Then they tend to spend that amount, and if they can spend it in one way, they'll do it and in another way they'll do that as well. -8- Advertising must be generally productive, or so much money would not be spent on it. Posadas, 478 U.S. at 341-42; _______ Oklahoma Telecasters Ass'n v. Crisp, 699 F.2d 490, 501 (10th __________________________ _____ Cir. 1983), rev'd on other grounds sub nom Capital Cities ________________________________ ______________ Cable, Inc. v. Crisp, 467 U.S. 691 (1984). We do not ____________ _____ consider, in the absence of any affirmative contradiction to rely on, that the district court was free to hold it unreasonable. In addition, the presumption based upon the Twenty-First Amendment, LaRue, supra, seems precisely in _____ _____ order. Parenthetically, the State contends this discussion to be unnecessary in view of the Court's action, 459 U.S. 807 (1982), dismissing an appeal, "for want of substantial federal question," from the decision in Queensgate Investment _____________________ Co. v. Liquor Control Commission, 69 Ohio St.2d 361 (1982), a ___ _________________________ price advertising limitation case. The district court rejected this contention because of a "different factual predicate," and because "a summary dismissal lacks a reasoned opinion." As to the latter, it is settled that such action has precedental effect, although not necessarily on the identical reasoning of the court. Mandel v. Bradley, 432 ______ _______ U.S. 173, 176 (1977). As to facts, the Ohio case involved a statute similar to the one at bar. Defendant restaurant advertised, in a circular, 50 cent drinks -- a markdown -- with meals. We see no relevant factual distinction. -9- The Ohio court, recognizing that commercial speech was entitled to some protection, pursued the four Central _______ Hudson tests and found that the statute was "not ______ unreasonable" in light of the Twenty-First Amendment's authorization to curb the evils of alcoholic beverages. 690 Ohio St.2d at 366. It concluded as follows. The regulation is directed toward regulation of the intoxicants themselves, rather than speech. This is unlike the case, e.g., in [Virginia State Board of ________________________ Pharmacy v. Virginia Citizens Consumer ________ ___________________________ Council, Inc., 425 U.S. 748 (1976),] ______________ where the speech was the actual focus of the regulation, since the aim of the restriction was the prevention of competition in pharmaceutical sales, not the discouragement of pharmaceutical purchases. Ibid. ____ Reliance on Queensgate as conclusive, however, __________ might raise possible questions. The first is whether the Court would have said there was no federal question if free speech had been curtailed by a regulation clearly unrelated to liquor. We need not answer this because we have found that the State's action was reasonable as a control. But suppose the primary purpose was that eliminated by the Queensgate court? On the issue of purpose the State is not __________ helped by its friends. Association's given reason for wanting to intervene as a defendant, that the statute protects the small vendor from the giants, could make logical sense, but might not be a lawful use of the Twenty-First -10- Amendment. Cf. California Retail Liquor Dealers Ass'n v. __ ________________________________________ Midcal Aluminum, Inc., 445 U.S. 97 (1980); Bacchus Imports, ______________________ ________________ Ltd. v. Dias, 468 U.S. 263 (1984). We need not resolve this ____ ____ question either, however. There is a burden to rebut the statutes' declared purpose, and plaintiffs have made no attempt. We conclude therefore that, with Queensgate or __________ without, plaintiff 44 Liquormart must lose. Finally, we observe that our conclusion coincides with the Rhode Island court's. Rhode Island Liquor Stores ___________________________ Ass'n v. Evening Call Pub. Co., 497 A.2d 331 (R.I. 1985); S & _____ _____________________ ___ S Liquor Mart, Inc. v. Pastore, 497 A.2d 729 (R.I. 1985). We ___________________ _______ have not mentioned its decisions hitherto because our obligation is to decide for ourselves. See Watson v. ___ ______ Estelle, 886 F.2d 1093, 1095 and n.3 (9th Cir. 1989). _______ Peoples Super Liquor Stores, a Massachusetts vendor that wishes to advertise its Massachusetts prices in Rhode Island, has a different case. Because of R.I. Gen. Laws 3- 8-8.1 no Rhode Island publisher will accept advertisements. 3-8-8.1. Price advertising by media 3-8-8.1. Price advertising by media or advertising companies unlawful. -- No or advertising companies unlawful. newspaper, periodical, radio or television broadcaster or broadcasting company or any other person, firm or corporation with a principal place of business in the state of Rhode Island which is engaged in the business of advertising or selling advertising time or space shall accept, publish, or broadcast any advertisement in this state of the price or make reference to the price of any alcoholic beverages. . . . -11- By the hypothesis under which we are justifying forbidding price advertising by local vendors, State residents, whose shopping opportunity is thus curtailed, will be more likely to purchase at higher-priced neighborhood outlets and less at lower-priced, viz., discount sellers elsewhere. Insofar as this constriction is aimed at foreign sellers, it is a deliberate, and, by hypothesis effective, discrimination and restraint on interstate commerce. Thus we have two questions. One, is the State's interest in health and welfare sufficient to overcome the foreign vendors' right of free speech? Two, if so, are the rights given the State by the Twenty First Amendment sufficient to meet the foreign vendors' further objections under the Commerce Clause? Viewed simply as free speech, if a party wishes to come into a state and do business, to some extent, at least, it should be subject to the same regulations as are its local counterparts. While the question may be close, where we are dealing simply with commercial speech, whose rights are limited, Bigelow v. Virginia, 421 U.S. 809, 818 et seq. _______ ________ __ ___ (1975), we believe the State health interest, as reinforced by the Twenty First Amendment, should empower the State to restrict foreigners as well. Nor do we find support for the contrary in the Bigelow opinion. We read the language relied _______ on by Peoples Super Liquor Stores in the light of the fact that the advertisement contained more than commercial speech. -12- See 421 U.S. at 822; Friedman v. Rogers, 440 U.S. 1, 11, n.10 ___ ________ ______ (1979). Here we have no more than commercial. The serious question is whether the Twenty First Amendment can prevail against the Commerce Clause when the State is deliberately favoring local vendors against foreign enterprise. The full meaning and effect of this Amendment has been much debated. At a minimum it does not do away altogether with the Commerce Clause. Cf. Hostetter v. __ _________ Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 331-332 ___________________________________ (1964). But, as a matter of dictum, the Court in Bacchus _______ Imports, Ltd. v. Dias, 468 U.S. 263, at 276 (1984), has ______________ ____ recognized the possibility that a state might discriminate "to promote temperance or to carry out any other purpose of the Twenty First Amendment." We have tentatively explored this question in some depth, and find it difficult. This raises a problem. The record shows that, initially, Peoples included the Commerce Clause in its contentions. On appeal, it dropped it. While at first we thought that the two principles were so tied together that we should nevertheless consider it, we have concluded that fairness to the State, and, indeed to us, requires that we do not do so without full briefing and argument. Accordingly, we apply the general principle and hold the Commerce Clause waived. Interface Group, Inc. v. Mass. Port Authority, 816 _____________________ ____________________ F.2d 9, 16 (1st Cir. 1987). Since without it Peoples must -13- fail, the decision below is reversed, with judgment for defendants. -14-