359 A.2d 345.

JOHN P. LOISELLE *vs.* CITY OF EAST PROVIDENCE *et al.*

JULY 1, 1976.

PRESENT: Paolino, Acting C.J., Joslin, Kelleher and Doris, JJ.

586

KELLEHER, J. The plaintiff was the Treasurer of the City of East Providence. He is before us on an appeal from a judgment entered in the Superior Court affirming the city council's termination of his services.

In April 1969 plaintiff became East Providence's City Treasurer. At the time of his appointment, he lived in Lincoln, Rhode Island, a town which is only minutes away by automobile from the East Providence city limits. The plaintiff was discharged from his position in June 1971 for failing to comply with sec. 9-14-3 of the East Providence Civil Service Ordinance, which requires all

appointees and all employees to become city residents within 6 months after they commence their employment.

The plaintiff's appeal is based upon his contention that this charter residency requirement violates his right to equal protection of the laws because it constitutes an unwarranted, unreasonable burden upon his fundamental right to travel. He also argues that the city should be estopped from insisting on compliance with the 6-months requirement. We see no merit in either contention.

In claiming a violation of his right to travel, plaintiff refers us to the cases of *Memorial Hosp.* v. *Maricopa County,* 415 U. S. 250, 94 S.Ct. 1076, 39 L.Ed. 2d 306 (1974); *Dunn* v. *Blumstein,* 405 U. S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and *Shapiro* v. *Thompson,* 394 U. S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In those cases the statutes setting forth a durational residency requirement as a precondition to the exercise of the right to vote (*Dunn*), or to the receipt of such governmental services as welfare assistance (*Shapiro*), or nonemergency hospitalization (*Memorial Hospital*) were declared unconstitutional because they impermissibly burdened a person's fundamental right to travel interstate. However, the fundamental "right to travel" recognized in *Shapiro* and discussed in *Dunn* and *Memorial Hospital* was limited to *interstate* migratory travel "with intent to settle and abide"[1] or, as the *Shapiro* decision stated, "to migrate, resettle, find a new job, and start a new life." *Shapiro* v. *Thompson, supra* at 629, 89 S.Ct. at 1328, 22 L.Ed.2d at at 612. Until recently the Court's discussion of the right to travel has been limited to this specific type of interstate travel. In fact, the Court in the Memorial Hospital

---

[1] *Memorial Hosp.* v. *Maricopa County,* 415 U. S. 250, 255, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306, 313 (1974). *See King* v. *New Rochelle Municipal Housing Auth'y.* 442 F.2d 646, 648 n.5 (2d Cir. 1971); *Cole* v. *Housing Auth'y,* 435 F.2d 807, 811 (1st Cir. 1970).

case specifically avoided drawing a "constitutional distinction" between interstate and intrastate travel. *Memorial Hosp.* v. *Maricopa County, supra* at 255, 94 S.Ct. at 1081, 39 L.Ed.2d at 313.

In *Detroit Police Officers Ass'n* v. *City of Detroit,* 405 U. S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972), the Court was presented with an appeal from a decision of the Michigan Supreme Court upholding a Detroit ordinance which required all policemen to live within the city. The Michigan court found, in effect, that the classification made by the ordinance bore a reasonable relationship to the legislative purpose. *Detroit Police Officers Ass'n* v. *City of Detroit,* 385 Mich. 519, 522-23, 190 N.W.2d 97, 97-98 (1971). The case was dismissed by the United States Supreme Court without opinion "for want of [a] substantial federal question." *Detroit Police Officers Ass'n* v. *City of Detroit, supra* at 950, 92 S.Ct. at 1173, 31 L.Ed.2d at 227. Such a dismissal constitutes a decision on the merits. *Hicks* v. *Miranda,* 422 U. S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

Several courts have used the *Detroit* decision, to varying degrees, to uphold the constitutionality of municipal ordinances containing similar continuing residence requirements. *Wardwell* v. *Board of Educ.,* 529 F.2d 625 (6th Cir. 1976); *Wright* v. *City of Jackson,* 506 F.2d 900 (5th Cir. 1975); *Ahern* v. *Murphy,* 457 F.2d 363 (7th Cir. 1972); *Ector* v. *City of Torrance,* 10 Cal.3d 129, 514 P.2d 433, 109 Cal.Rptr. 849 (1973); *Abrahams* v. *Civil Serv. Comm'n,* 65 N. J. 61, 319 A.2d 483 (1974). In all of these cases the terminated employee resided outside the municipality but within the state in which the municipality was located. Each court, like the Michigan Supreme Court, applied the rational interest test, obviously believing that the fundamental right originally defined in *Shapiro* did not include the right to live wherever one pleased and simul-

taneously demand employment in another municipality.[2] Any doubt that the thrust of the Supreme Court's summary dismissal of the Michigan controversy constituted a recognition that the Detroit continuing residency requirement did not affect the police officer's fundamental right to travel was resolved by the Court's most recent opinion concerning the right to travel, *McCarthy* v. *Philadelphia Civil Serv. Comm'n,* 424 U. S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976).

In *McCarthy* the Court for the first time addressed in an opinion (per curiam) a type of interstate travel other than migratory travel "with intent to settle and abide," as seen in *Shapiro* and its progeny. Mr. McCarthy's interstate travel was a commute between his home in Villas, New Jersey, and his place of employment in Philadelphia, Pennsylvania. As in the *Detroit Police Officers Ass'n* case, McCarthy was terminated from the fire department because he had violated a municipal residency requirement. The Commonwealth Court of Pennsylvania found that this ordinance did not violate his federally protected right to interstate travel. *McCarthy* v. *Philadelphia Civil Serv. Comm'n,* 19 Pa. Commw. 383, 339 A.2d 634 (1975). The Pennsylvania Supreme Court, in an unreported order, denied a petition to review the decision. The judgments of these courts were affirmed by the United States Supreme Court.

The dismissal of McCarthy's appeal buttressed the Court's holding in the *Detroit* case. In *McCarthy* the Court: (1) characterized the continuing residency requirement in the *Detroit Police Officers Ass'n* case as rational,

---

[2] Chief Justice Weintraub of the New Jersey Supreme Court most aptly framed the problem presented in this type of a case when he stated:

"The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government." *Kennedy* v. *City of Newark,* 29 N. J. 178, 183, 148 A.2d 473, 476 (1959).

590

(2) observed that it never expressed any doubt as to the validity of a requirement that a person be a resident of a municipality at the time he filed his employment application, (3) stressed that nothing in its previous holdings gave support to McCarthy's claim that he had a constitutional right to be employed in Philadelphia while living in New Jersey, and (4) emphasized that in the *Memorial Hospital, Dunn, and Shapiro* cases it had only questioned the validity of durational residency requirement and not "appropriately defined and uniformly applied bona fide residence requirements." The Court then described the Philadelphia ordinance as "that kind of bona fide continuing residence requirement" which should be left undisturbed. *McCarthy* v. *Philadelphia Civil Serv. Comm'n, supra* at 424 U. S. 645, 96 S.Ct. at 1155, 47 L.Ed.2d at 369.

By so deciding, the Supreme Court has concluded that the right to travel interstate does not include the right to live in one state and simultaneously demand employment in the municipality of another. When the holdings in the *Detroit* and *Philadelphia* cases are combined, they indicate that the fundamental right to travel, be it of the interstate or intrastate variety,[3] does not embody the

[3]Combining the Supreme Court's express limitation of the right to travel in *Shapiro* with Chief Justice Weintraub's characterization of the problem presented in this case, it appears that the word "travel" in the phrase "right to travel" includes a number of different types of travel. Obvious'y, travel means more than mere locomotion. *Memorial Hosp.* v. *Maricopa County,* 415 U. S. at 255, 94 S.Ct. at 1080, 39 L.Ed.2d at 313. Whether a specific type of travel is a fundamental right and, therefore, within the "right to travel" would depend upon the intent which motivates the movement. (e.g. compare the movement (migratory) between states with intent to settle and abide in *Shapiro* with the movement (commuting) within a state with the intent to live in one place and demand work in another in *Detroit Police Officers Ass'n.*)

The First and Second Circuits in two factually "indistinguishable" cases challenging *durational* residency requirements affecting the appellant's right to migratory travel recognized in *Shapiro* appear to have employed this same analysis. In *King* v. *New Rochelle Municipal Housing*

right to reside where one wishes and demand municipal employment in some other governmental geographical subdivision.

Municipalities that require their employees to live within the city or town limits are acting rationally and within the constitutional framework if their requirements are appropriately defined and uniformly applied. The California Supreme Court in *Ector* listed seven goals which it considered legitimate state purposes rationally promoted by employee residency requirements. Included among those listed were the "diminution of absenteeism and tardiness among municipal personnel"; the improvement of the quality of employee performance by their greater knowledge of the municipality's conditions and their feeling of having a greater personal stake in the progress of the municipality; the ready availability of trained personnel in emergencies; and the economic benefits flowing from the expenditure within the community of the em-

---

*Auth'y, supra* note 1, and *Cole* v. *Housing Auth'y, supra* note 1, both courts held that since the type of travel recognized as a fundamental right in *Shapiro* was migratory, it should make no difference whether the travel is within or between states. This conclusion was based on the premise that this fundamental right is personal and, therefore, would transcend geographical limits. Judge Waterman stated in *King* that "[i]t would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state." *King* v. *New Rochelle Municipal Housing Auth'y, supra* at 648. Surely this statement provides an insight into the Supreme Court's reluctance to draw a "constitutional distinction" between *intrastate* and *interstate* travel. If the "right to travel" is personal, like freedom of speech, then the logical significance of the descriptions "intrastate" and "interstate" is merely adjectival to denote the geographical range of the movement. But if the origin of the right is in the commerce clause or elsewhere, the significance of these terms is probably more historical than geographical. *See Note, Residence Requirements after Shapiro* v. *Thompson,* 70 Colum. L. Rev. 134, 137-39. Perhaps the Court will specifically discuss the right's origin if and when it seeks to draw a "constitutional distinction" between *interstate* and *intrastate* travel.

ployees' salaries. *Ector* v. *City of Torrance, supra* at 135, 514 P.2d at 436, 109 Cal.Rptr. at 852. The same benefits that were available to the city of Torrance are available to the city of East Providence and its residents, both employees and non-employees.

The plaintiff argues that if the residence requirements serve such purposes, why would the General Assembly enact legislation prohibiting any city and town from requring any firefighter or police officer to reside within its geographical limits as a condition for employment. General Laws 1956 (1970 Reenactment) §45-2-15. The ready response to this contention is that it is within the Legislature's prerogative to specify what municipalities may do with regard to employees who aid or assist in the discharge of a state responsibility. Therefore, this enactment in no way derogates the validity of the residency requirement adopted by East Providence.

The estoppel argument presented by plaintiff necessitates a brief recitation of the chronological highlights of his employment experiences with the city of East Providence. He reported for work in April 1969. Almost 2 years later, January 1971, the city manager issued a memorandum requesting each department head to notify all non-resident employees that they had until the following June 1 to comply with the requirements of sec. 9-14-3. On May 21 the council voted against extending this deadline. Six days later a letter was sent to plaintiff at his Lincoln address, informing him that he faced suspension and subsequent discharge by June 7 if he did not comply with the deadline. On June 4 plaintiff sent a letter to the council, asking that he be given another year in which to make his move. The request was denied, and his discharge followed.

The plaintiff argues that the city, in having permitted more than 2 years to elapse before it began to enforce

the 6-months residency requirement, should now be barred from seeking his discharge. We have recognized that estoppel may be invoked against a governmental agency where appropriate circumstances so require. Silence, of course, may be the basis for estoppel where there is a duty to speak lest the silence would reasonably mislead another to rely on the silence to his detriment. *Schiavulli v. School Comm.*, 114 R. I. 443, 449-50, 334 A.2d 416, 419 (1975).

This doctrine may not be invoked here. The plaintiff and the defendant saw fit to present their controversy to the trial justice on an agreed statement of facts. The plaintiff argues at great length about the employment opportunities that passed him by because of his delayed entry into the job market. However, there is nothing in the agreed statement of facts that even remotely supports such an assertion. In fact, it is clear that, notwithstanding the publication of the January 5, 1971 notice of deadline, the plaintiff continued to make Lincoln his home, making no effort to resolve his problem until 3 days before he was slated to be fired, when he asked the city council to give him another year to look for and purchase a home in East Providence.

The plaintiff's appeal is denied and dismissed.

*Edward John Mulligan, and Carl Capozza* of Counsel for plaintiff.

*Joseph T. Little, Assistant Solicitor*, for defendant.