**S & S LIQUOR MART, INC.**

v.

**Louis PASTORE, Liquor Control Administrator.**

No. 82–347–Appeal.

Supreme Court of Rhode Island.

Aug. 26, 1985.

Thomas J. Liguori, Jr., Natale L. Urso, Urso, Liguori & Urso, Westerly, for plaintiff.

John H. Hines, Jr., Providence, of counsel, for R.I. Liquor Control Admin.

Stephen M. Miller, Special Counsel, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This appeal was brought by S & S Liquor Mart, Inc. (S & S Liquor), to review a decision of a Superior Court justice denying and dismissing its action for declaratory and injunctive relief. As its name suggests, S & S Liquor is a retail alcoholic-beverage dealer. A class-A liquor licensee, S & S Liquor is a Rhode Island corporation with its principal place of business located on Granite Street in the town of Westerly, Rhode Island, which town borders the state of Connecticut. The defendant is Louis Pastore (Pastore) in his capacity as liquor-control administrator for the State of Rhode Island.[1]

---

1. Subsequent to oral arguments and prior to    publication of this opinion, the Governor of the

The facts of this case are not in dispute. On January 1, 1982, the State of Connecticut, through P.A. 81–294, repealed its statutes that had established minimum markups on liquor sales. According to S & S Liquor, the removal of these minimum-pricing requirements resulted in the immediate advertising of prices of alcoholic beverages by Connecticut retail alcoholic-beverage dealers;[2] these advertisements appeared both in the New London Day, a newspaper published in New London, Connecticut, and circulated in Connecticut and Westerly, and the Westerly Sun, a newspaper located in Westerly and circulated both in Westerly and in Connecticut.

Matthew J. Serra, the president of S & S Liquor, then contacted Pastore and advised him that he would like to advertise prices of S & S Liquor's alcoholic beverages, at least in Connecticut newspapers. Pastore responded by informing Serra that his license would be suspended if he advertised prices of alcoholic beverages in any publications, either in Rhode Island or in Connecticut. Following receipt of this communiqué from Pastore, S & S Liquor instituted an action challenging the constitutionality of G.L.1956 (1976 Reenactment) § 3–8–7,[3] the statute that, among other things, prohibits Rhode Island retail liquor licensees from advertising the prices of alcoholic beverages. S & S Liquor sought to have the statute declared invalid as a violation of the First and Fourteenth Amendments, the commerce clause, and the Sherman Anti-Trust Act. The trial justice was not persuaded, and this appeal ensued.

It is befitting, before undertaking our analysis of the issues in this appeal, to shed some light on the controversy relating to the impact of the Twenty-first Amendment upon the states' authority to regulate alcoholic beverages under their traditional police power standing alone.[4] The trial justice, in his decision denying all relief to plaintiff, stated that the Twenty-first Amendment "grants the states virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." S & S Liquor concedes that this statement by the trial justice is supported by *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110, 100 S.Ct. 937, 946, 63 L.Ed.2d 233, 246 (1980), but then asserts, vigorously, that the court misapplied the Twenty-first Amendment to the facts of this case because of its failure to consider other constitutional rights and provisions.

For many, enactment of the Twenty-first Amendment occurred so long before their respective births that the circumstances that occasioned it are an obscure part of history to which they may have difficulty

State of Rhode Island, Edward D. DiPrete, appointed Kathleen A. Voccola to succeed Pastore as liquor-control administrator. We see no need at this point to substitute the new administrator as a party defendant.

2. Connecticut, unlike Rhode Island, does not restrict the advertising of prices of alcoholic beverages.

3. General Laws 1956 (1976 Reenactment) § 3–8–7 provides:

"**Advertising price of malt beverages, cordials, wine or distilled liquor.**—No manufacturer, wholesaler, or shipper from without this state and no holder of a license issued under the provisions of this title and chapter shall cause or permit the advertising in any manner whatsoever of the price of any malt beverage, cordials, wine or distilled liquor offered for sale in this state; provided, however,

that the provisions of this section shall not apply to price signs or tags attached to or placed on merchandise for sale within the licensed premises in accordance with rules and regulations of the department."

4. Prior to ratification of the Twenty-first Amendment, the states' power to regulate intoxicating liquor was recognized. In the first half of the nineteenth century, Chief Justice Taney stated:

"And if any State deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I see nothing in the constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper." The License Cases, *Thurlow v. Commonwealth of Massachusetts,* 46 U.S. (5 How.) 504, 576–77 [12 L.Ed. 256] (1847).

relating. Succinctly, the Twenty-first Amendment was as much a reaction to the failure of prohibition as prohibition was to the problems of excessive alcohol consumption.

Section 1 of the Twenty-first Amendment repealed the Eighteenth Amendment's prohibition of the manufacture, sale, or transportation of liquor. Section 2 of the Twenty-first Amendment states:

> "The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Section 2 has been described as "unique in the constitutional scheme in that it represents the only express grant of power to the states, thereby creating a fundamental restructuring of the constitutional scheme as it relates to one product—intoxicating liquors." *Castlewood International Corp. v. Simon*, 596 F.2d 638, 642 (5th Cir.1979), *vacated and remanded sub nom.*, 446 U.S. 949, 100 S.Ct. 2914, 64 L.Ed.2d 806 (1980), *panel opinion reinstated*, 626 F.2d 1200 (5th Cir.1980). Justice Rehnquist has recognized this section as "conferring something more than the normal state authority over public health, welfare and morals." *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 349–50 (1972). Although it is true that "there is no bright line between federal and state powers over liquor," *Midcal Aluminum, Inc.*, 445 U.S. at 110, 100 S.Ct. at 946, 63 L.Ed.2d at 246, it is also clear that Rhode Island, under its general police power, has a substantial interest in the health and welfare of its citizens, including the stability of its families and their safety while on Rhode Island highways, all of which are clearly affected by the abuse of alcohol.[5] *"Added* to this already substantial interest is the power of [Rhode Island] under the Twenty-first Amendment to regulate the sale, and the incidents thereof, of alcoholic beverages, and to protect its citizens from the evils incident to alcohol." *Oklahoma Telecasters Association v. Crisp*, 699 F.2d 490, 500 (10th Cir.1983) (Emphasis added.), *rev'd on other grounds sub nom.*, 467 U.S. ——, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). Although we recognize that the Twenty-first Amendment is but one part of the Federal Constitution that must be read in conjunction with the rest of the Constitution, *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350, 356 (1964), and that this amendment did not grant the states the authority to abrogate individual rights secured by the Fourteenth Amendment, *Craig v. Boren*, 429 U.S. 190, 206–09, 97 S.Ct. 451, 461–63, 50 L.Ed.2d 397, 412–14 (1976), we also note that, because of the Twenty-first Amendment, a state statute regulating the sale of alcoholic beverages is entitled to an "added presumption in favor of [its] validity." *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 718, 101 S.Ct. 2599, 2602, 69 L.Ed.2d 357, 361 (1981) (per curiam) (quoting *California v. LaRue*, 409 U.S. at 118, 93 S.Ct. at 397, 34 L.Ed.2d at 352). With these guidelines in mind, we now proceed to an analysis of the issues before us.

Initially, S & S Liquor challenges § 3–8–7 as an unconstitutional restraint on the exercise of its First Amendment rights. We disagree and hold that § 3–8–7 does not violate the First Amendment to the United States Constitution.

The statute under review in this appeal constrains S & S Liquor and other Rhode Island retail alcoholic-beverage dealers from advertising prices of their commodities. The parties now before us concur in the view that § 3–8–7 proscribes only commercial speech, that is, expression related solely to the economic interests of

---

5. Here we would emphasize, as we do in *Rhode Island Liquor Stores Association v. The Evening Call Publishing Co.*, 497 A.2d 331 (R.I.1985), that our concern for the promotion of temperance does not relate to our Connecticut neighbors but relates solely to Rhode Islanders and their conduct within the geographical boundaries of this state.

the speaker and his audience. Historically, commercial speech was accorded little, if any, First Amendment freedom-of-speech protection, and thus it could be freely regulated by statutes and ordinances.[6] As both parties now acknowledge, however, advertising as a form of commercial speech is accorded limited protection by the First Amendment. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *see also* Barron and Dienes, *Handbook of Free Speech and Free Press*, § 4.5 at 166–173 (1979). Our duty here is to determine whether Rhode Island's statute prohibiting the advertisement of the prices of alcoholic beverages is a permissible regulation of S & S Liquor's attenuated First Amendment rights.

In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the United States Supreme Court declared that restrictions designed to keep true commercial information from the public were legitimate in appropriate circumstances. In striking down as unconstitutional a New York Public Service Commission regulation that restrained utilities from using advertisements directed at the promotion of the use of electricity, the Court articulated a four-part test as the proper framework for analyzing cases involving restraints on commercial speech.

"In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351.

The threshold presented by the initial two parts of the *Central Hudson* test is easily crossed. We can assume that liquor advertising in Rhode Island should be regarded as protected commercial speech. Neither in his brief nor during oral arguments did Pastore raise an issue relating to the misleading nature of S & S Liquor's proposed price advertising. There is also no dispute that the commercial speech here in question concerns lawful activity. Although substantially regulated, the sale and consumption of "ardent spirits" and other alcoholic beverages is lawful within the State of Rhode Island.[7] We also have little difficulty in finding that the asserted governmental interests, herein described as the promotion of temperance and the reasonable control of the traffic in alcoholic beverages, are substantial. We note, parenthetically, that the word "temperance" is oftentimes mistaken as a synonym for "abstinence." It is not. Webster's Third New International Dictionary (1961) defines "temperance" as "moderation in or abstinence from the use of intoxicating drink." The Rhode Island Legislature has the authority, derived from the state's inherent police power, to enact a variety of

6. In *Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), the constitutionality of a New York City ordinance that prohibited the circulation of handbills containing commercial advertising on the city streets or in other public places was at issue. Despite First Amendment objections, Mr. Justice Roberts, speaking for the unanimous Court, stated: "This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion * * *. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising." *Id.* at 54, 62 S.Ct. at 921, 86 L.Ed. at 1265; *see also Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), where the Court upheld a conviction for violation of an ordinance prohibiting door-to-door solicitation of magazine subscriptions.

7. General Laws 1956 (1976 Reenactment) title 3.

laws designed to suppress intemperance or to minimize the acknowledged evils of liquor traffic. Thus, there can be no question that these asserted interests are indeed substantial. *Oklahoma Telecasters Association v. Crisp*, 699 F.2d at 500.

We arrive finally at what we consider to be the critical inquiry in this case: Does the statutory suppression of price advertising in the sale and distribution of alcoholic beverages within the State of Rhode Island directly advance the state's interest in the promotion of temperance? Because we hold that the state's interest in reducing the consumption of liquor, that is, the "temperance interest," is directly advanced by the restriction on liquor-price advertising, we see no reason to undertake a similar analysis with respect to the state's interest in controlling the traffic in alcoholic beverages.

■ Our analysis begins with the understanding that a party seeking a judicial veto of a legislative act on constitutional grounds carries the burden of persuasion. *Boucher v. Sayeed*, —— R.I. ——, ——, 459 A.2d 87, 92 (1983). This rule of law is based on the fundamental proposition that legislation is presumed to be constitutional. *Burrillville Racing Ass'n v. State*, 118 R.I. 154, 157, 372 A.2d 979, 982 (1977). In *Boucher* we noted that an individual challenging a legislative judgment may attack its constitutionality by directing the court's attention to various facts that could be categorized as either legislative facts or adjudicative facts. As a general rule, we said, adjudicative facts are those that are developed in a particular case concerning the immediate parties whereas legislative facts are established truths, facts, or pronouncements that generally do not change from case to case. In the *Boucher* case, however, the trial justice and this court relied on the legislative fact that the 1975–76 medical malpractice crisis that gave rise to the litigation being challenged was nonexistent in 1981.

But S & S Liquor has not demonstrated that uncontrolled advertising of the price of liquor poses no threat to the legislative goal of alcoholic moderation or abstinence. Nor is this thesis readily apparent to us. It may be that some day, in some litigated case, evidence will be adduced that will support the proposition that these advertising restrictions do not further temperance objectives. Until that day arrives, Rhode Islanders' thirst for alcoholic-beverage advertising will have to be quenched through the electronic and print media constantly reminding them of such thoughts as "This Bud's for you" or "It's Miller Time."

■ In considering the issue whether statutes prohibiting the advertisement of alcoholic beverages directly advance the governmental interest in reducing the sale and consumption of liquor, most courts have concluded that such laws do have a direct effect on the use of alcohol. In *Queensgate Investment Co. v. Liquor Control Commission*, 69 Ohio St.2d 361, 433 N.E.2d 138 (1982), *appeal dismissed for want of a substantial federal question*, 459 U.S. 807, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982),[8] the Ohio Supreme Court de-

---

8. *Queensgate Investment Co. v. Liquor Control Commission*, 69 Ohio St.2d 361, 433 N.E.2d 138 (1982), involved a First Amendment challenge to an Ohio Liquor Control Commission regulation that, although generally permitting liquor advertising, required that certain liquor permit holders "not advertise the price per bottle or drink of any alcoholic beverage, or in any manner refer to price or price advantage except within their premises and in a manner not visible from the outside of said premises." *Id.* at 362 n. 1, 433 N.E.2d at 139 n. 1. The Ohio Supreme Court held that the regulation was not an unconstitutional restraint on First Amendment rights. In the subsequent appeal to the United States Supreme Court, the jurisdictional statement questioned whether the regulation violated the First Amendment. As indicated above, the appeal was dismissed for want of a substantial federal question, Justices Brennan and Stevens dissenting.

A dismissal of an appeal from a state court for want of a substantial federal question is a decision on the merits, and is binding on lower courts. *See* 12 Moore, *Federal Practice* ¶ 400.05–1 at 4–25 (2d ed.1982). The Supreme Court explained the precedential effect of dismissals for want of a substantial federal question and summary affirmances in *Hicks v. Miranda*, 422

clared that "[t]he advertising of drink prices and price advantages would encourage and stimulate excessive consumption of alcoholic beverages; an advertising prohibition aids the interest in preventing that consumption." 69 Ohio St.2d at 366, 433 N.E.2d at 142. The Tenth Circuit, in *Oklahoma Telecasters Association v. Crisp*, found it not "constitutionally unreasonable for the State of Oklahoma to believe that advertising will not only increase sales of particular brands of alcoholic beverages but also of alcoholic beverages generally." 699 F.2d at 501.

Perhaps such advertising will stimulate the thirst of a consumer to the point that he elects to make an alcoholic purchase. Speculation aside, it is beyond our comprehension why huge sums of money would be expended on the promotion of sales of liquor without expected favorable results. And we would point out, before moving on to the final inquiry under the *Central Hudson* test, that there is an inherent contradiction between the affidavit of Matthew J. Serra filed in the Washington County Superior Court and the wording of S & S Liquor's brief subsequently submitted in this court. In his affidavit, Serra laments that he is unable to counteract recent business losses "unless I am allowed to advertise prices which are competitive to my competitors." In its brief S & S Liquor asserts that prohibition of price advertising does not directly advance temperance. These opposing sentiments obviously cannot be reconciled, and in analyzing the accuracy of each, we believe the latter assertion must yield to the former.

■ The final inquiry under the *Central Hudson* test is whether § 3–8–7 is more extensive than necessary to serve the enunciated governmental interests. We hold that it is not. We would first point out that S & S Liquor, and other Rhode Island retail alcoholic-beverage licensees, are, under § 3–8–7, only prohibited from initiating any advertisements relating to the *price* of alcoholic beverages; they are free to initiate other advertising relating to the availability of their wares, and additionally, on-premises price advertising is allowed. Thus, Rhode Island has not totally eliminated the dissemination of information concerning alcoholic beverages. Rather, in order to advance its interests in promoting temperance and controlling the traffic in alcoholic beverages, the Legislature has prohibited Rhode Island retail alcoholic-beverage licensees from advertising the prices of their commodities. We recognize that Rhode Island retail alcoholic-beverage licensees whose business establishments are located in close proximity to their Connecticut or Massachusetts competitors are placed in a difficult financial position because of § 3–8–7. Although this fact awakens our sympathies, sympathy alone

U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). *Hicks* counseled lower courts to treat summary affirmances and dismissals for want of a substantial federal question as decisions on the merits that were binding upon them "'until such time as the Court informs [them] that [they] are not.'" *Id.* at 345, 95 S.Ct. at 2289, 45 L.Ed.2d at 236. Although the Supreme Court itself is less likely to adhere to any form of summary disposition as opposed to a fully reasoned opinion, the "curious device" of dismissing the appeal for want of a substantial question "carries the stare decisis effect of binding state courts and lower federal courts * * *." 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure:* Jurisdiction § 4014 at 631 (1977). This court in *Loiselle v. City of East Providence*, 116 R.I. 585, 588, 359 A.2d 345, 347 (1976), took the position that a dismissal of an appeal by the United States Supreme Court for want of a substantial federal question constituted a decision on the merits.

Although *Queensgate* manifestly presented an issue concerning the tension between commercial speech and the state's interest in controlling the sale and consumption of alcoholic beverages, we are not convinced that the jurisdictional statement presented to the court reflected the precise issue involved in the instant case insofar as the Ohio regulation was more narrowly drawn than § 3–8–7. Therefore, in light of the Supreme Court's declaration that the *stare decisis* effect of summary dispositions of appeals extends only to "the precise issues presented and necessarily decided by those actions," *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 205 (1977), our decision herein is not solely predicated upon the Court's summary dismissal of *Queensgate.*

raises no First Amendment concerns for the reasons explained above. We hold that § 3–8–7 of Rhode Island General Laws is a valid restriction on commercial speech and thus does not violate S & S Liquor's First Amendment rights.

In the alternative, S & S Liquor maintains that § 3–8–7, both on its face and as applied, violates the equal-protection clause of the Fourteenth Amendment in that Connecticut alcoholic-beverage dealers may advertise their prices in the Westerly Sun and the New London Day to inform potential customers and attract business while Rhode Island retailers do not have the same right. In responding to this contention, Pastore asserts, among other things, that there is no classification here on which an equal-protection analysis can be based. We accept this reasoning.

In *Dunagin v. City of Oxford, Mississippi*, 718 F.2d 738, 752 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3553–54, 82 L.Ed.2d 855 (1984), the Fifth Circuit, faced with a similar equal-protection attack directed at a Mississippi State Tax Commission regulation that prohibited most liquor advertisements that originated only within the state, held that there was no classification upon which the plaintiffs could assert a meaningful equal-protection claim. The court grounded this holding on its analysis of the commercial-speech doctrine. Specifically, after observing that the commercial-speech doctrine is concerned primarily with protecting the "level and quality of information reaching the listener," the court concluded that the statute under review did not discriminate against any particular classes of consumers within the state. *Dunagin*, 718 F.2d at 752–53. Thus, the equal-protection challenge failed because an equal-protection analysis was not appropriate in a situation in which the speech in question did not advance any interests of the speaker. Note, *Constitutional Protection of Commercial Speech*, 82 Colum.L. Rev. 720, 749 (1982). We find the reasoning and analysis of the Fifth Circuit on this issue persuasive and thus conclude that § 3–8–7 does not violate the equal-protection clause.

■ A liquor license, although not property in the strict legal sense, "is regarded as having some aspect of a property right that protects the possessor from arbitrary action by the local licensing board." *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 24 n. 5, 317 A.2d 124, 129 n. 5 (1974) (dictum); *see also Burton v. Lefebvre*, 72 R.I. 478, 485, 53 A.2d 456, 460 (1947). It is elementary that a possessor of a liquor license is also protected from arbitrary state action. It is the position of S & S Liquor on this appeal that § 3–8–7 contravenes the due-process clause of the Fourteenth Amendment in that it constitutes an arbitrary and unreasonable restriction on its liberty of contract and a taking of its property without due process of law. In support of this argument, appellant refers us to *Haigh v. State Board of Hairdressing*, 76 R.I. 512, 72 A.2d 674 (1950), a case in which this court held that a prohibition against price advertising by hairdressers violated the due-process clause of the Fourteenth Amendment.

Our holding in *Haigh* was grounded on the rationale that a prohibition against price advertising by hairdressers was unreasonable and arbitrary because it bore "no substantial and reasonable relation to the public health, morals or other phase of the general welfare." *Id.* at 518, 72 A.2d at 678. But the state, as outlined in detail above, does have a significant and legitimate interest in promoting temperance and discouraging excessive consumption of alcoholic beverages, and the Supreme Court has acknowledged that "restrictions on liquor advertising represent at least a reasonable, albeit limited, means of furthering the goal of promoting temperance." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. ——, ——, 104 S.Ct. 2694, 2709, 81 L.Ed.2d 580, 599 (1984). *Haigh* is thus distinguishable from the case at bar, and we find that § 3–8–7 does not contravene the due-process clause of the Fourteenth Amendment.

■ In its final efforts to have § 3–8–7 declared invalid, S & S Liquor asserts that the liquor-advertising ban offends both the commerce clause and the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7 (1973). The spirit of this aspect of the appeal is that § 3–8–7 "stifles competition." Although we acquiesce in the view that the dictates of § 3–8–7 may have a depressing influence on competition within the liquor industry, this alone is insufficient to overcome the validity of the price-advertising ban. In any event, both issues are of dubious merit at best and thus can be dismissed in summary fashion.

Recently, in *Capital Cities Cable, Inc.*, the Supreme Court held unconstitutional an Oklahoma policy, as set forth in an opinion issued by the Oklahoma Attorney General, that required cable-television operators to delete all advertisements for alcoholic beverages contained in out-of-state programs before retransmitting them to local subscribers. After observing that the regulation of cable-television transmissions was preempted by a comprehensive federal scheme (the authority for which derives from the commerce clause), the Court, after weighing both state and federal powers, found that the statute was barred by the supremacy clause because the state regulation squarely conflicted with the execution of federal law and the state's central power under the Twenty-first Amendment was not directly implicated. 467 U.S. at ——, 104 S.Ct. at 2709, 81 L.Ed.2d at 600. We are unable to discern, however, any such paramount federal policy with which the Rhode Island price-advertising ban conflicts. Additionally, unlike the situation in *Capital Cities Cable, Inc.*, where the Court found that the Oklahoma policy expressed only a "limited interest" in promoting temperance (the Court noted that the ban at issue was directed only at wine commercials that periodically appeared on out-of-state signals), § 3–8–7, which bans entirely all off-premises liquor-price advertising by liquor-license holders, evinces the substantial state interests in promoting temperance and controlling the traffic in alcoholic beverages. Thus, *Capital Cities Cable, Inc.*, is of no benefit to S & S Liquor, and we hold that § 3–8–7 does not offend the commerce clause.

■ We also believe that § 3–8–7 is protected from federal antitrust regulations since the price-advertising ban meets the two standards for antitrust immunity under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Succinctly, § 3–8–7 is part of a regulatory scheme, the declared purpose of which is "the promotion of temperance and * * * the reasonable control of the traffic in alcoholic beverages"[9] and, pursuant to G.L. 1956 (1976 Reenactment) § 3–2–2, wherein the Legislature delegated active supervision of title 3 to Pastore in his capacity as liquor-control administrator, this policy is actively supervised by the state itself. *Midcal Aluminum, Inc.*, 445 U.S. at 105, 100 S.Ct. at 943, 63 L.Ed.2d at 243; *City of Lafayette, Louisiana v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364, 381 (1978).

S & S Liquor's effort to nullify the statutory bar against liquor-price advertising is, in our opinion, being pursued at a most unpropitious time. Our neighbors to the north, Massachusetts, through their Legislature, have recently abolished an institution called "Happy Hour," a heavily advertised event that attracts large numbers of patrons who are fully aware that for a certain period they can buy two drinks for the price of one or an array of intoxicants at reduced prices. Similar legislation was recently adopted by our Legislature at its January 1985 session with the enactment of P.L. 1985, ch. 345, that, in its relevant portions, prohibits any retail licensee from requiring "any person or persons to buy more than one (1) drink at a time by reducing the price of said drink" and bars any licensee from advertising or promoting "in any manner, or in any medium, happy hours, open bars, two-for-one nights and/or

---

9. General Laws 1956 (1976 Reenactment) § 3–1–5.

free drink specials." These endeavors highlight the fact that the public is becoming increasingly sensitive to the problems related to excessive drinking. Although our opinion is not grounded on these concerns, we do note in conclusion that our decision herein is in concert with recent public policy in this area. To hold otherwise might encourage a media explosion along the lines of a competitive race to discover who can offer the most product for the lowest price. A contrary decision would also pave the way for entrepreneurs to offer dollar days on which the viewer or reader can, for an extra dollar, buy two bottles of beer or wine or whiskey for the price of one.

S & S Liquor's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

WEISBERGER, Justice, concurring.

I concur in the result reached by the majority solely because I believe that this result is mandated by *Queensgate Investment Co. v. Liquor Control Commission,* 69 Ohio St.2d 361, 433 N.E.2d 138, *appeal dismissed for want of a substantial federal question,* 459 U.S. 807, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982). In that case the Ohio Liquor Control Commission brought action against a liquor licensee who sought to declare unconstitutional as violative of the First Amendment an Ohio statute prohibiting liquor-pricing advertising in that state. In the case at bar, a retail alcoholic beverage dealer seeks to challenge the constitutionality of G.L.1956 (1976 Reenactment) § 3-8-7, which prohibits Rhode Island retail liquor licensees from advertising the price of alcoholic beverages. Consequently, an examination of the issues in this case discloses that they are substantially identical with the issue raised in *Queensgate.* In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court stated that such a dismissal constitutes a decision on the merits that is binding on both federal and state courts. *See*

*Loiselle v. City of East Providence,* 116 R.I. 585, 588, 359 A.2d 345, 347 (1976). Therefore, although I cannot accept the rationale of the majority, I believe that the result reached was mandated by *Queensgate* and consequently I concur in such result.

MURRAY, Justice, dissenting.

It is not my belief that the Supreme Court's dismissal of *Queensgate Investment Co. v. Liquor Control Commission,* 69 Ohio St.2d 361, 433 N.E.2d 138 (1982), for want of a substantial federal question controls the case at bar. For this reason, I maintain my position espoused in *Rhode Island Liquor Stores Association v. The Evening Call,* 497 A.2d 331 (R.I.1985), that it is incumbent upon the party seeking to suppress truthful and nonmisleading commercial speech to justify that suppression. In the instant case, as in the *Evening Call* case, there has been no showing that the suppression of speech furthers a substantial interest of the State of Rhode Island. I must therefore respectfully dissent from the majority opinion.

*Queensgate* involved an Ohio Liquor Control Commission regulation which expressly stated that "[a]dvertising may include the retail price of the original container or packages" of alcoholic beverages. *Queensgate Investment Co.,* 69 Ohio St.2d at 362 n. 1, 433 N.E.2d at 139 n. 1. What was prohibited by the *Queensgate* regulation was the advertisement of prices of *individual* drinks, served opened and for consumption on the premises. This more narrowly drawn restriction on commercial speech is easily distinguished from § 3-8-7, which is a ban on *any* advertisement of price. Further, the licensee in the instant case sought to advertise prices of alcoholic beverages in a Connecticut newspaper, not a Rhode Island newspaper. In contrast, the advertisement in *Queensgate* was circulated within the State of Ohio. It appears to me that all would agree that Rhode Island has no substantial interest in protecting Connecticut citizens against the

evils of intemperance, especially where the Connecticut Legislature has not seen fit to do so by restricting price advertisements of alcholic beverages. Rhode Island's police powers do not reach beyond its borders. *Bigelow v. Virginia,* 421 U.S. 809, 827–28, 95 S.Ct. 2222, 2235, 44 L.Ed.2d 600, 615 (1975). It is patent that any interest it asserts outside those borders is entitled to little, if any, weight. *Id.*

I am persuaded that upon all these considerations, as well as the Supreme Court's admonishment that its summary dispositions are binding precedent only on "the precise issues presented and necessarily decided," *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 205 (1977), the per curiam opinion of the Ohio Supreme Court in *Queensgate* is not controlling.

I would hold that the Rhode Island Liquor Control Administrator has failed to justify its supression of commercial speech and would, therefore, reverse the judgment of the Superior Court.