July 8, 1994 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1893

44 LIQUORMART, INC. AND
PEOPLES SUPER LIQUOR STORES, INC.,

Plaintiffs, Appellees,

v.

STATE OF RHODE ISLAND,

Defendant, Appellee,

RHODE ISLAND LIQUOR STORES ASSOCIATION,

Intervenor, Appellant.

No. 93-1927
44 LIQUORMART, INC. AND
PEOPLES SUPER LIQUOR STORES, INC.,

Plaintiffs, Appellees,

v.

STATE OF RHODE ISLAND,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Cyr, Circuit Judge,
Aldrich, Senior Circuit Judge,
and Stahl, Circuit Judge.



Lauren E. Jones with whom Caroline C. Cornwell, Jones Associates,
William P. Gasbarro and Robert M. Brady were on brief for Rhode Island
Liquor Stores Association.
Rebecca Tedford Partington, Special Assistant Attorney General,
with whom Jeffrey B. Pine, Attorney General, was on brief for State of
Rhode Island.
Evan T. Lawson with whom Lawson & Weitzen was on brief for
plaintiffs-appellees.



ALDRICH, Senior Circuit Judge. The State of Rhode

Island, that did not ratify the Eighteenth Amendment, and was

among the earliest to ratify the Twenty-First that repealed

it, in 1956 adopted two statutes, assertedly aimed at

promoting temperance, forbidding advertising the price of

intoxicating liquor, except at the place of sale if sold

within the state. The "declared purpose is the promotion of

temperance and for the reasonable control of the traffic in

alcoholic beverages." R.I. Gen. Laws 3-1-5.

R.I. Gen. Laws 3-8-7 provides,

3-8-7. Advertising price of malt 3-8-7. Advertising price of malt
beverages, cordials, wine or distilled beverages, cordials, wine or distilled
liquor. -- No manufacturer, wholesaler, liquor. --
or shipper from without this state and no
holder of a license issued under the
provisions of this title and chapter
shall cause or permit the advertising in
any manner whatsoever of the price of any
malt beverage, cordials, wine or
distilled liquor offered for sale in this
state; provided, however, that the
provisions of this section shall not
apply to price signs or tags attached to
or placed on merchandise for sale within
the licensed premises in accordance with
rules and regulations of the department.

Section 3-8-8.1, post, enlarges this language to

forbidding making "reference to the price of any alcoholic

beverage,"1 that defendant Rhode Island Liquor Control

Administrator, a strict enforcer, construes as including

remote references such as "WOW!"



1. See also Liquor Control Adm. Reg. 32.

-3-

In this action plaintiffs, 44 Liquormart, Inc. and

Peoples Super Liquor Stores, Inc., having sufficient standing

to attack these statutes in every particular, seek a

declaration against the Administrator (hereinafter the State)

of unconstitutionality as contravening the First Amendment.

Rhode Island Liquor Stores Association (Association) has

intervened as a party defendant. After a bench trial, in an

extensive opinion the court found for plaintiffs. Defendants

appeal. They succeed with respect to limiting advertising by

Rhode Island vendors.

The stage it set below is described by the State.

[T]he advertising ban directly
advanced the governmental interest by
increasing the cost of alcoholic
beverages, thereby lowering the amount of
alcohol consumption by residents of the
State of Rhode Island. . . . [T]he
State's power to totally ban any
advertising about alcoholic beverages
necessarily included the lesser power to
restrict price advertising.

Further, the State contended that plaintiffs, in order to

rely on the First Amendment, must "prove that the four part

Central Hudson test could not be met."

Association, a group of small liquor stores, whose

intervention as a co-defendant was not opposed by the State,

alleged as its ground for intervening that if advertising of

prices were to be allowed, its members "would be obliged to

participate in the advertising arena and would be at a

definite disadvantage when matched up against retailers who

-4-

hold multiple licenses." This complaint was later bolstered

by adding that competitive price advertising would tend to

lower prices, and that "a more competitive market for alcohol

might be considered an undesirable goal."

We start with the four issues that Central Hudson

raises when a state's interest conflicts with the rights of a

would-be commercial speaker.

At the outset, we must determine whether
the expression is protected by the First
Amendment. [I] For commercial speech to
come within that provision, it at least
must concern lawful activity and not be
misleading. [II] Next, we ask whether
the asserted governmental interest is
substantial. If both inquiries yield
positive answers, we must determine [III]
whether the regulation directly advances
the governmental interest asserted, and
[IV] whether it is not more extensive
than is necessary to serve that interest.

Central Hudson Gas & Electric Corp. v. Public Service

Commission of New York, 447 U.S. 557, 566 (1980). The

ultimate purpose is to weigh "the expression [and] the

governmental interests served by its regulation." Id. at

563.

I. In the present case the first test raises no

question. II. For the second it was stipulated, "The State

of Rhode Island has a substantial interest in regulating the

sale of alcoholic beverages." Plaintiffs concede that

promoting temperance is such an interest. The dispute,

accordingly, is whether forbidding price advertising

-5-

"directly advances" temperance, and "is not more extensive

than is necessary." There is a further question with regard

to local advertising by an out-of-state vendor.

III. "Directly advances." We start with the

burden of proof. The burden is on the party seeking

suppression, here the State. Edenfield v. Fane, 113 S. Ct.

1792, 1800 (1993). But to what extent? The district court

held that it was an issue for it to decide, unfettered,

between competing witnesses, and since, on its weighing the

evidence, the court was not persuaded that the State was

correct, it failed. We do not think the burden that strict.

It is not correctness, it is reasonableness.

In the first place, the term "directly advances" is

not absolute. Edenfield, 113 S. Ct. at 1800 ("alleviate to a

material degree"); Trustees of the State University of New

York v. Fox, 492 U.S. 469, 480 (1989) ("reasonable fit").

See also Posadas de Puerto Rico Assoc. v. Tourism Co., 478

U.S. 328, 342 (1986) ("reasonable"). And while the state has

the burden, in California v. LaRue, 409 U.S. 109, 118-19

(1972), the Court spoke of "the added presumption in favor of

the validity of the state regulation in this area that the

Twenty-First Amendment requires." Historically the state has

failed where the evidence was "at most, tenuous," Central

Hudson, 447 U.S. at 569; "unsupported assertions: nowhere

does the State cite any evidence or authority of any kind,"

-6-

Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 648

(1985); lack of studies or "anecdotal evidence," Edenfield,

113 S. Ct. at 1800. Warrantable inferences, however, may be

sufficient. Posadas, 478 U.S. at 341-42 (advertising). What

should a court do when there is no empirical2 evidence

either way, and expert opinions go both ways? Even

plaintiffs' expert, whom the court credited, admitted that

"advertising has cumulative effects that are difficult to

detect in studies, and that research studies have been varied

and equivocal because it is a difficult topic to research."

Should the court be free to choose?

IV. Before answering these questions we observe

that the "not more extensive than is necessary" inquiry is

subject to the same considerations. Re R.M.J., 455 U.S. 191,

207 (1982) ("reasonably necessary"). The district court did

not deal with this directly, except to note the concession of

the State's expert that "the objective of lowering

consumption of alcohol by banning price advertising could be

accomplished by establishing minimum prices and/or by

increasing sales taxes on alcoholic beverages." This is not

an answer; the State is entitled to a reasonable choice.

This includes choice of method -- it is not obliged to prove



2. This word is a summary of the court's findings that such
studies as were offered were too inconclusive to be relied
on.

-7-

that some other method, e.g., taxation, would be less

effective. Cf. Fox, 492 U.S. at 478.

Returning to our questions, there would seem

inherent merit in the State's contention that competitive

price advertising would lower prices, and that with lower

prices there would be more sales. We would enlarge on this.

There are doubtless many buyers whose consumption is

sometimes measured by their free money. If a buyer learns

that plaintiffs charge less, is he not likely to go there,

and then buy more? Correspondingly, if ignorant of lower

prices elsewhere, will he not tend to buy locally, at the

higher price, and thus buy less? See Stanley I. Ornstein and

Dominique M. Hanssens, Alcohol Control Laws and the

Consumption of Distilled Spirits and Beer, 12 J. Consumer

Res. 200 (September 1985). Further, if Association members

would fight plaintiffs' advertised prices, as they presage,

by lowering their own, then, again, might there not be more

buys?

Even plaintiffs' witness Smart conceded that some

believed this inference reasonable.

What I'm aware of are studies that show
that people generally decide how much
money they have to spend on alcoholic
beverages per week or per month. Then
they tend to spend that amount, and if
they can spend it in one way, they'll do
it and in another way they'll do that as
well.

-8-

Advertising must be generally productive, or so much money

would not be spent on it. Posadas, 478 U.S. at 341-42;

Oklahoma Telecasters Ass'n v. Crisp, 699 F.2d 490, 501 (10th

Cir. 1983), rev'd on other grounds sub nom Capital Cities

Cable, Inc. v. Crisp, 467 U.S. 691 (1984). We do not

consider, in the absence of any affirmative contradiction to

rely on, that the district court was free to hold it

unreasonable. In addition, the presumption based upon the

Twenty-First Amendment, LaRue, supra, seems precisely in

order.

Parenthetically, the State contends this discussion

to be unnecessary in view of the Court's action, 459 U.S. 807

(1982), dismissing an appeal, "for want of substantial

federal question," from the decision in Queensgate Investment

Co. v. Liquor Control Commission, 69 Ohio St.2d 361 (1982), a

price advertising limitation case. The district court

rejected this contention because of a "different factual

predicate," and because "a summary dismissal lacks a reasoned

opinion." As to the latter, it is settled that such action

has precedental effect, although not necessarily on the

identical reasoning of the court. Mandel v. Bradley, 432

U.S. 173, 176 (1977). As to facts, the Ohio case involved a

statute similar to the one at bar. Defendant restaurant

advertised, in a circular, 50 cent drinks -- a markdown --

with meals. We see no relevant factual distinction.

-9-

The Ohio court, recognizing that commercial speech

was entitled to some protection, pursued the four Central

Hudson tests and found that the statute was "not

unreasonable" in light of the Twenty-First Amendment's

authorization to curb the evils of alcoholic beverages. 690

Ohio St.2d at 366. It concluded as follows.

The regulation is directed toward
regulation of the intoxicants themselves,
rather than speech. This is unlike the
case, e.g., in [Virginia State Board of
Pharmacy v. Virginia Citizens Consumer
Council, Inc., 425 U.S. 748 (1976),]
where the speech was the actual focus of
the regulation, since the aim of the
restriction was the prevention of
competition in pharmaceutical sales, not
the discouragement of pharmaceutical
purchases.

Ibid.

Reliance on Queensgate as conclusive, however,

might raise possible questions. The first is whether the

Court would have said there was no federal question if free

speech had been curtailed by a regulation clearly unrelated

to liquor. We need not answer this because we have found

that the State's action was reasonable as a control. But

suppose the primary purpose was that eliminated by the

Queensgate court? On the issue of purpose the State is not

helped by its friends. Association's given reason for

wanting to intervene as a defendant, that the statute

protects the small vendor from the giants, could make logical

sense, but might not be a lawful use of the Twenty-First

-10-

Amendment. Cf. California Retail Liquor Dealers Ass'n v.

Midcal Aluminum, Inc., 445 U.S. 97 (1980); Bacchus Imports,

Ltd. v. Dias, 468 U.S. 263 (1984). We need not resolve this

question either, however. There is a burden to rebut the

statutes' declared purpose, and plaintiffs have made no

attempt. We conclude therefore that, with Queensgate or

without, plaintiff 44 Liquormart must lose.

Finally, we observe that our conclusion coincides

with the Rhode Island court's. Rhode Island Liquor Stores

Ass'n v. Evening Call Pub. Co., 497 A.2d 331 (R.I. 1985); S &

S Liquor Mart, Inc. v. Pastore, 497 A.2d 729 (R.I. 1985). We

have not mentioned its decisions hitherto because our

obligation is to decide for ourselves. See Watson v.

Estelle, 886 F.2d 1093, 1095 and n.3 (9th Cir. 1989).

Peoples Super Liquor Stores, a Massachusetts vendor

that wishes to advertise its Massachusetts prices in Rhode

Island, has a different case. Because of R.I. Gen. Laws 3-

8-8.1 no Rhode Island publisher will accept advertisements.

3-8-8.1. Price advertising by media 3-8-8.1. Price advertising by media
or advertising companies unlawful. -- No or advertising companies unlawful.
newspaper, periodical, radio or
television broadcaster or broadcasting
company or any other person, firm or
corporation with a principal place of
business in the state of Rhode Island
which is engaged in the business of
advertising or selling advertising time
or space shall accept, publish, or
broadcast any advertisement in this state
of the price or make reference to the
price of any alcoholic beverages. . . .

-11-

Rhode Island can regulate Rhode Island sales because, to

quote Queensgate, supra, "The regulation is directed toward

regulation of the intoxicants themselves, rather than

speech." This is precisely the reasoning that sustains

forbidding publication of Rhode Island prices: Action that

maintains higher prices achieves the State's purpose of

restricting sales. But how can it legislate to limit

Massachusetts sales? Cf. Brown-Forman Distillers Corp. v.

New York State Liquor Authority, 476 U.S. 573 (1986). Even

if it could assume a legitimate paternalistic interest in

regulating its citizens' out-of-state activities, cf. United

States v. Edge Broadcasting Co., 113 S. Ct. 2696, 2707

(1993),3 Rhode Island has no power to control Massachusetts

prices for any purpose. As the Court said in Collins v.

Yosemite Park & Curry Co., 304 U.S. 518, 538 (1938), quoting

from the court below, (207 F. Supp. at 1013), "[T]hough the

[Twenty-First] Amendment may have increased 'the state's

power to deal with the [alcohol] problem . . . , it did not

increase its jurisdiction.'" Thus, "[a] State does not

acquire power or supervision over the internal affairs of

another State merely because the welfare and health of its

own citizens may be affected when they travel to that

State. . . . [I]t may not, under the guise of exercising



3. Edge Broadcasting, a lottery case, involved Congressional
action restricting advertising that raised no question of
jurisdiction.

-12-

internal police powers, bar a citizen of another State from

disseminating information about an activity that is legal in

that State." Bigelow v. Virginia, 421 U.S. 809, 824-25

(1975) (abortion). This is a square answer. As to Peoples

Super Liquor Stores, the court was correct.

Reversed in part; affirmed in part.

-13-